## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 20-0717** (BOR Appeal No. 2055203)
                       (Claim No. 2020013100)

**RENEE MORRIS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by counsel Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Renee Morris, by counsel T. Colin Greene, filed a timely response.

The issue on appeal is compensability of the claim. The claims administrator rejected the claim in an Order dated November 26, 2019. On February 20, 2020, the Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's rejection of the claim and held the claim compensable for compression of spinal cord. This appeal arises from the Board of Review's Order dated August 20, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Ms. Morris is employed as a motorman by Murray American Energy, Inc. On November 12, 2019, she alleged that she was injured in the course of and resulting from her employment when a co-worker "belly-butted" her by shoving her using his stomach, knocking her backwards onto the ground. When she hit the ground, the M20 underground rescue breathing apparatus she is required to wear that attaches to the back of her tool belt was jammed into her lower spine causing her spine to hyperextend. She immediately noted severe low back pain, hip pain, numbness, and tingling in her feet and legs. She was able to call for help, and an ambulance transported her to United Hospital Center in Bridgeport, West Virginia. Ms. Morris was immediately hospitalized.

Ms. Morris completed her portion of the Employees' and Physicians' Report of Occupational Injury of Disease form on November 12, 2019. She described her work injury as, "Employee belly-butted me and made me fall backward on my back." The physician's section was completed and indicated that she suffered an occupational injury and that it was unknown whether the injury aggravated a prior disease, but it was likely that she had underlying spinal issues. The injury was described as compression of the spinal cord, and she was referred to Bill Underwood, M.D., a neurosurgeon at United Hospital Center.

Dr. Underwood noted muscle strength abnormalities 4/5 of her lower extremities and abnormal sensation in the L3-S1 dermatomes bilaterally. An MRI of Ms. Morris's lumbosacral spine was compared to an MRI from November 25, 2015, with an impression being degenerative lumbar spondylosis with associated canal and foraminal stenosis. The MRI revealed severe canal stenosis at L3-4 and L4-5, with what appeared to be compression of the cauda equina. Also noted was a 6 mm synovial cyst arising from the left facet at L3-4 that impressed upon the thecal sac. Dr. Underwood's impression was acute paraparesis status post-fall onto back, most likely the result of underlying severe degenerative central canal stenosis at L3-4 and L4-5 with synovial cyst at L3-4 worsened by disc bulging and hyperextension of her spine. Due to the progression of her symptoms of numbness and weakness, emergency L3-4 and L4-5 bilateral compressive laminectomies were performed. Following surgery, she reported improved relief from her

symptoms. Ms. Morris was hospitalized from November 12, 2019, through November 15, 2019. The discharge diagnoses were paraparesis and severe central canal stenosis at L3-4 and L4-5. A subsequent operative note by Dr. Underwood listed findings of severe central canal stenosis from L3-5 secondary to ligamentum flavum hypertrophy/facet and hypertrophy/disc bulging.

Murray American Energy, Inc., disputed the injury and noted that there were no witnesses to the incident when it submitted written statements by Bruce Osborne, the individual Ms. Morris claims knocked her down on November 12, 2019, and Jimmy Harris, another co-worker. Mr. Osborne's statement details his version of the events involving his confrontation with Ms. Morris. He stated that he was called by Ryan Richman to run the motor for the day shift. He was then informed by Ms. Morris that she would be running the motor, as she was the senior person. He ignored her and got his tools, but when he went to the motor shanty to eat, she was upset that he went to the company instead of the union representative over a previous issue. Mr. Osborne said that Ms. Morris told him she was going to "slap him in the mouth." She then yelled at Ryan Richman that she wanted union representation, and she was going to have him escorted outside. Mr. Osborne stated that she grabbed her things and walked to the slope bottom and stayed at the motor until Jimmy Harris arrived to talk to him.

Mr. Harris provided a typed chronology of events stating that at 9:20 AM, Ms. Morris called asking for union representation. Mr. Harris said he went underground and found her "on the slope bottom at the call box crying", and she stated that Bruce belly-bumped her while they were arguing. Mr. Harris said he found Mr. Osborne at 9:43 AM at the motor, and he denied touching Ms. Morris. Mr. Osborne said that when he arrived, she yelled at him about going to the company rather than the union over a prior issue. She demanded that she would be the one running the outby motor because she had more seniority. At 10:08 AM, Mr. Harris said Ms. Morris wanted to complete an accident report because her hip was hurting, and she said that "Bruce" knocked her down when he belly-bumped her. Perry Heflin, the union representative, arrived at 10:12 AM, and five minutes later, Ms. Morris came out of the bathroom saying she could not walk and that her legs were tingling. She was taken to the first aid room. Mr. Harris reported that her pants and jacket were clean and no dirt was noticed from her being knocked to the ground. At 10:40 AM an ambulance was called due to her continued pain.

A handwritten note by James Hershman dated November 14, 2019, states that he was working in the MCC room on November 12, 2019, when he observed Ms. Morris standing by the motors. He said that Mr. Osborne was sitting in the motor shanty and told him that Ms. Morris "started on him" as soon as he came underground, and she wanted to run the outby motor. Mr. Hershman said that Ms. Morris was still standing by her motor when he went back to the MCC area. When he went to "the bottom" and then to the "slope bottom," he heard her state on the radio that she wanted union representation.

On November 26, 2019, the claims administrator rejected the claim for workers' compensation benefits.[1] The Order stated that it was found that the mechanism of injury did not constitute an injury and that there were conflicting statements from Ms. Morris and several other employees about the incident. Ms. Morris protested the claims administrator's rejection of her claim.

Murray American Energy, Inc., submitted prior medical evidence documenting that Ms. Morris has a history of low back injuries. The earliest known available record of an injury is a 2004 Independent Medical Evaluation report regarding an injury to her wrist, wherein Charles Lefebure, M.D., noted that "patient currently not working because of her back injury at rest care home." Dr. Lefebure indicated that the back injury occurred in 2002, and that Ms. Morris remained off work and was continuing to receive medical treatment for her low back. She subsequently suffered another workplace injury to her low back on November 5, 2015, when she reported low back pain radiating down her bilateral legs after picking up a block. A lumbar spine x-ray performed at United Hospital Center on November 6, 2015, documented mild progression of degenerative endplate changes at multiple levels in the lumber spine since a 2004 x-ray, and mild disc space narrowing at L3-L4, L4-L5, and L5-S1. A lumbar spine MRI dated November 25, 2015, revealed disc bulging and degenerative facet changes at L2-3, L3-4, and L4-5 with mild to moderate stenosis.

Murray American Energy, Inc., asked Ronald Fadel, M.D., to review Ms. Morris's medical records for the purpose of addressing whether she sustained a new injury to her low back on November 12, 2019. In a report dated January 9, 2020, Dr. Fadel stated that prior to the alleged date of injury in the claim, Ms. Morris had developed age-acquired, previously symptomatic lumbar spondylosis with secondary progressive neural element compressive neuropathy. He concluded that the work event "represented an acute exacerbation of preexisting canal and neural element compression neuropathy," but that the incident did not aggravate her preexisting lumbar pathology to the extent of causing a distinct new injury. Dr. Fadel opined that Ms. Morris would have required the surgery performed by Dr. Underwood regardless of the occurrence of November 12, 2019. Based upon Dr. Fadel's assessment, Murray American Energy, Inc., argues that the known existence of a preexisting condition is sufficient to place her claim outside the realm of compensability, citing Syl. Pt. 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), which holds:

> "A non-compensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a non-compensable preexisting injury results in a discreet new injury, that new injury may be found compensable."

---

[1] The claims administrator's Order dated November 26, 2019, attempted to define a compensable injury as "an isolated fortuitous event received by an employee in the course of and resulting from his or her employment," although this was left as an incomplete sentence.

4

It is Murray American Energy, Inc.'s, position that Ms. Morris did not sustain a new injury in the course of and resulting from her employment.

In support of her protest of the claims administrator's Order, Ms. Morris testified under oath at a deposition taken on January 10, 2020, that she was arguing with Mr. Osborne at the time he belly-butted her causing her to fall. When she fell, the M20 rescue breathing apparatus on her tool belt was forced into her spine and she experienced a loss of feeling in her feet and legs. She testified that she called Ryan Richman, Foreman/Superintendent, on her radio stating that she required union representation, and she reported the injury to Jimmy Harris. Ms. Morris filled out an accident report and requested an ambulance which took her to the Emergency Center at United Hospital Emergency Center. An MRI performed showed spinal conditions requiring emergency surgery, which was performed by Dr. Underwood. As a result of her injury, she testified that she was hospitalized from November 12, 2019, through November 15, 2019, with the need for follow-up treatment. Although she acknowledged past back problems, Ms. Morris testified that that the injury of November 12, 2019, caused problems different from what she had previously experienced. She also testified that she was not having any back problems before arriving at work on November 12, 2019.

In a decision dated February 20, 2020, the Office of Judges reversed the claims administrator's Order of November 26, 2019, and held the claim compensable for compression of spinal cord. The Office of Judges concluded that Ms. Morris showed by a preponderance of the evidence that she was injured in the course of and as a result of her employment and that the diagnosis of compression of spinal cord is a discrete new condition resulting from her injury in the claim. Although Ms. Morris has underlying degenerative conditions in her lumbar spine, which were well documented prior to November 12, 2019, the Office of Judges determined that she had not received treatment for her lumbar spine after December 28, 2015, nor was she experiencing abnormal symptoms until the injury in this claim. She did not have numbness in her lower extremities or acute paraparesis as described by Dr. Underwood until falling on her M20. It was also noted that Ms. Morris did not have a prior diagnosis of compression of spinal cord, which was diagnosed after her injury. The Office of Judges found that the condition of compression of spinal cord was a new and discrete condition that caused Ms. Morris's lower extremities to immediately experience tingling and numbness.

In addressing the opinion expressed by Dr. Fadel in his January 9, 2020, report, that he did not feel that the work incident aggravated Ms. Morris's preexisting low back condition to the extent of causing a distinct new injury, the Office of Judges did not find his opinion to be persuasive. The Office of Judges determined that Ms. Morris had not had any immediate need for surgery, nor any ongoing pain, numbness, or tingling prior to her work injury. While she did have preexisting degenerative conditions, it was found that her injury falls within *Gill's* exception for discreet new injuries. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the decision on August 20, 2020.

We agree with the decision of the Office of Judges, as affirmed by the Board of Review. Although Ms. Morris has a history of preexisting back conditions, when she arrived at work on November 12, 2019, she did not require emergency surgery to preserve the sensation in, and

function of, her lower extremities. However, in the course of and resulting from her employment, she was knocked backward onto items on her tool belt, which hyperextended her spine, and ultimately required emergency intervention. The Office of Judges was correct in finding that Ms. Morris's work injury caused a new discreet injury of compression of spinal cord which was addressed by Dr. Underwood on November 12, 2019.

Affirmed.

**ISSUED: November 5, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6